Slip Op. 19-77

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SOLIANUS, INC. AND CONSOLIDATED FIBERS, INC., *Plaintiffs,* v. UNITED STATES, *Defendant,* and DAK AMERICAS LLC, NAN YA PLASTICS CORPORATION, AMERICA AND AURIGA POLYMERS INC., *Defendant-Intervenors.* | Before: Richard W. Goldberg, Senior Judge Court No. 18-00179 |

**OPINION AND ORDER**

[The court sustains the determinations of the U.S. Department of Commerce.]

Dated: June 21, 2019

*Gregory S. Menegaz, J. Kevin Horgan, Alexandra H. Salzman*, deKeiffer & Horgan, PLLC, of Washington, D.C., for plaintiffs.

*Kelly Krystyniak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Kristen McCannon*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Paul C. Rosenthal, David C. Smith, Kathleen M. Cusack*, Kelley Drye & Warren LLP, of Washington, D.C., for defendant-intervenors.

Goldberg, Senior Judge: Plaintiffs Solianus, Inc. ("Solianus") and Consolidated Fibers,

Inc. ("Consolidated") (collectively "Plaintiffs") challenge the final results issued by the U.S.

Department of Commerce ("Commerce" or "the Department") in its administrative review of the

antidumping duty on fine denier polyester staple fiber from the Republic of Korea ("Korea").

*See Fine Denier Polyester Staple Fiber from the Republic of Korea: Final Affirmative*

*Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 24,743 (Dep't Commerce May 30,

2018) (final determ.) ("*Final Determination*") and accompanying Issues & Decisions Mem.

(Dep't Commerce May 23, 2018) ("I&D Mem.").  Plaintiffs challenge the Department's

"all-others" antidumping duty rate assigned to all non-investigated Korean producers and

exporters in the *Final Determination*.

On review of Plaintiffs' motion for judgment on the agency record, Pls.' Mot. for J. on

Agency R., ECF No. 24 (Jan. 17, 2019) ("Pls.' Br."), the court sustains Commerce's methodology

in calculating the all-others antidumping duty rate of 30.15 percent.

## BACKGROUND

Commerce initiated an antidumping duty investigation of fine denier polyester staple

fiber from Korea in June 2017.  *See Fine Denier Polyester Staple Fiber from the People's*

*Republic of China, India, the Republic of Korea, Taiwan, and the Socialist Republic of Vietnam:*

*Initiation of Less-Than-Fair-Value Investigations*, 82 Fed. Reg. 29,023 (Dep't Commerce June

27, 2017) (initiation).  The period of investigation ran from April 1, 2016 through

March 31, 2017.  *Id*.  On July 31, 2017, Commerce selected Down Nara Co. ("Down Nara") and

Huvis Corporation ("Huvis") as mandatory respondents for this investigation and issued both

companies antidumping questionnaires.  *See* Selection of Resp'ts Mem., Joint Appendix, ECF

No. 30 ("J.A.") (May 2, 2019) Tab 9 (July 31, 2017).  Toray Chemical Korea Inc. ("TCK")

requested to be examined as a voluntary respondent.  TCK Request for Voluntary Resp't

Selection, J.A. Tab 12 (Aug. 7, 2017).  Immediately thereafter, Huvis informed Commerce that it

did not intend to participate in the investigation.  Huvis's Notice of Intent Not to Participate, J.A.

Tab 13 (Aug. 10, 2017).  The Department then selected TCK as a third mandatory respondent.

*See* Selection of an Add'l Mandatory Resp't Mem., J.A. Tab 15 (Aug. 18, 2017).  The

Department did not elect to replace any other mandatory respondent for individual investigation.

Commerce issued questionnaires to both Down Nara and TCK.  I&D Mem. at 13, 21.  Down

Nara never responded to the Department's questionnaire.

     In its Preliminary Determination, Commerce found that Down Nara and Huvis failed to

cooperate to the best of their ability under 19 U.S.C. § 1677e(b) and assigned them each a rate of

45.23 percent, based on total adverse facts available (AFA).  *See Fine Denier Polyester Staple*

*Fiber from the People's Republic of Korea: Preliminary Affirmative Determination of Sales at*

*Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional*

*Measures*, 83 Fed. Reg. 660 (Dep't Commerce Jan. 5, 2018) (prelim. determ.) ("*Preliminary*

*Determination*") and accompanying Prelim. Decision Mem., J.A. Tab 5 (Dec. 18, 2017)

("PDM").  TCK received a *de minimis* rate and Commerce preliminary calculated an all-others

rate of 30.15 percent, reflecting an average of the rates assigned to all three mandatory

respondents.  *See* PDM at 11 ("[W]e preliminarily determine that it is reasonable to calculate the

all-others rate based on a simple average of the zero percent dumping margin and the two

dumping margins based totally on AFA.").  Commerce did not make any major changes to these

rates in its Final Determination and continued to assign the average rate of 30.15 percent from all

three mandatory respondents to all-others rate companies, including Plaintiffs.  Plaintiffs

(Solianus and Consolidated Fibers) are Korean exporters of fine denier polyester staple fiber not

individually investigated.

Today, Plaintiffs raise a challenge before this court concerning the Department's

all-others rate assignment.  *See generally* Pls.' Br.  Specifically, Plaintiffs claim that because two

of the mandatory respondents (Down Nara and Huvis) did not participate in the investigation,

they were not "individually investigated" within the meaning of 19 U.S.C. § 1673d(c)(1)(B)(i),

and therefore, should not be included in Commerce's calculation.  As a result, Plaintiffs maintain

that Commerce's all-others rate was improperly calculated.  *Id*. at 8.  Instead, Plaintiffs argue,

Commerce should have calculated the all-others rate using only TCK's *de minimis* margin.  *Id*. at

8–9.  The Government defends the Department's position as consistent with the Federal Circuit's

interpretation of an "individually investigated" respondent.  *See generally* Def.'s Resp. to Pls.'

Mot., ECF No. 28 (Mar. 22, 2019) ("Def.'s Br.").[1]

Ultimately, the Department's methodology in calculating the all-others rate was legally

sound and did not produce an unfair result.  The court upholds the resulting 30.15 percent

all-others antidumping rate assigned to Plaintiffs.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and will

sustain Commerce's determinations unless they are "unsupported by substantial evidence on the

record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

---

[1] Additionally, Defendant-Intervenors raise an exhaustion challenge to Plaintiffs' claims, arguing that because Plaintiffs did not request to become voluntary respondents, they cannot "seek [their] own duty rate" by way of challenging the all-others rate.  *See* Def.-Intervenors' Resp. to Pls.' Mot., ECF No. 27 (Mar. 22, 2019).  The court shall require exhaustion of administrative remedies where appropriate.  28 U.S.C. § 2637(d).  However, Plaintiffs here are not seeking an individual duty rate separate from the all-others rate.  As Plaintiffs correctly identify, Plaintiffs are challenging the all-others rate methodology and application to all non-investigated firms, including itself.  Therefore, the exhaustion doctrine is not at issue in this case.

## DISCUSSION

Pursuant to 19 U.S.C. § 1673d(a)(1), Commerce is required to make a final determination of whether certain merchandise is sold in the United States at less than its fair value.  In so doing, the antidumping duty law generally requires that Commerce establish an antidumping duty margin for each exporter for which review is requested.  Specifically, the Department must (i) determine the estimated weighted average dumping margin for each exporter and producer individually investigated; and (ii) determine the estimated all-others rate for all exporters and producers not individually investigated.  § 1673d(c)(1)(B)(i).

Because it would be practically impossible to examine *all* producers and exporters of all relevant merchandise, the statute contains a built-in all-others rate calculation—which allows Commerce to assign an antidumping rate to non-investigated firms.  Section 1673d(c)(5) governs the method for determining the all-others rate.  Generally, the estimated all-others rate is equal to the weighted average of the estimated weighted average dumping margins for exporters and producers that were individually investigated, excluding any zero or *de minimis* margins, or margins based entirely upon facts available.  § 1673d(c)(5)(A).  However—foreshadowing the issue at hand—the statute also recognizes an exception to the general rule for calculating all-others rates: if all margins are zero, *de minimis*, or based entirely on facts available, the statute permits Commerce to use "any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated."  *Id*.  According to the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, the "expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to facts available."  *See* Statement of Administrative Action, H.R. Doc. No.

103–316 (1994), at 873 reprinted in 1994 U.S.C.C.A.N. 4040, 4201 ("SAA")[2].  But, "if this

method is not feasible . . . Commerce may use other reasonable methods."  *Id.*

Here, Commerce had assigned two of the mandatory respondents (Down Nara and Huvis)

total AFA because they refused to participate in the investigation, and the remaining mandatory

respondent, TCK, received a *de minimis* rate—thereby triggering the "exception" under section

1673d(c)(5).  Commerce then calculated the all-others rate by averaging the rates assigned to

these three respondents, including the AFA rates assigned to Down Nara and Huvis.  I&D Mem.

at 14–18.  Plaintiffs challenge the Department's methodology because "it does not rely upon the

margin calculated for the only individually investigated exporter for purposes of determining the

all-others rate for Solianus."  Pls.' Br. at 8.  Implicit in (and integral to) Plaintiffs' argument,

however, is the claim that because Down Nara and Huvis failed to participate in the

investigation, the only "individually investigated" exporter was TCK—which received a *de*

*minimis* rate.  Essentially, Plaintiffs assert, a company cannot be "individually investigated"

unless it places *some* information on the record for Commerce to actually examine.  Moreover,

according to Plaintiffs, Commerce abandoned the "expected method" of calculating the separate

rate (that is, weight-averaging the margins) without first establishing that the method was not

"feasible" or would result in a margin that is not "reasonably reflective of potential dumping

margins."  Pls.' Br. at 8–9.  Ultimately, Plaintiffs request that Commerce, on remand,

re-calculate the all-others rate using only TCK's *de minimis* margin.  *See* Pls.' Br. at 18.

What is the meaning of "individually investigated," in the context of section 1673d?  The

statute permits Commerce to "use any reasonable method to establish the estimated all-others

---

[2] Congress has deemed the SAA "as an authoritative expression of the United States concerning
the interpretation and application of the Uruguay Round Agreements."  19 U.S.C. § 3512(d).

rate for exporters and producers not individually investigated, including averaging the estimated

weighted average dumping margins determined for the exporters and producers *individually*

*investigated*." 19 U.S.C. § 1673d(c)(5)(B).  Plaintiffs are pointedly refraining from arguing that

the term "individually investigated" is ambiguous.  Pls.' Reply Br. at 4.  That is the correct

approach, based on controlling precedent that, "as a matter of the plain meaning of words, there

is no ambiguity in the word 'individually' or in the word 'investigated.'"  *MacLean-Fogg v.*

*United States*, 753 F.3d 1237, 1243 (Fed. Cir. 2014).  Indeed, the phrase "individually

investigated" "must be understood to be a term of art," *id.* at 1244.  The issue before the court

today boils down to whether firms that were assigned a rate based entirely on AFA (due to a total

refusal to cooperate with the investigation) are still considered "individually investigated," so as

to be included in the all-others calculation.  Plaintiffs assert that entirely non-cooperating firms

cannot be "individually investigated" unless they place at least some information on the record

for Commerce to examine.  Pls.' Br. at 8–9.  Based on the plain language of the statute and

Federal Circuit precedent, the court disagrees.

      The antidumping statute creates two categories of importers or producers: those that are

"individually investigated" and those that are not.  The statute explicitly states that the estimated

all-others rate is the rate applied to "exporters and producers not individually investigated,"

19 U.S.C. § 1673d(c)(5)(B).  Based on statutory context, then, producers that are "not

individually investigated" represent the "all-other" firms that, "[a]s a practical matter," were "not

selected for examination," SAA at 4200.  *See also Changzhou Hawd Flooring Co., Ltd. v. United*

*States*, 848 F.3d 1006, 1011 (Fed. Cir. 2017) ("In investigations involving exporters from market

economies, 19 U.S.C. § 1673d(c)(5) establishes the method for determining the rate for entities

that are not individually investigated, *the so-called all-others rate*." (emphasis added)).  On the

other hand, firms that are "individually investigated" fall into the category of producers or

exporters wherein Commerce initiated an investigation and made a determination "based upon

the information available to it at the time of the determination, or whether there is a reasonable

basis to believe or suspect that the merchandise is being sold . . . at less than fair value."  19

U.S.C. § 1673b(b)(1)(A).  In other words, "there is no possible doubt that a [] respondent who

receives his individual rate has undergone 'individual investigation.'"  *MacLean-Fogg Co.*, 753

F.3d at 1243.  This rule is further confirmed by the operating regulation, which defines what it

means to be individually examined:

> (c) Exporters and producers *examined*—
>
> (1) In general. In an investigation, the Secretary will attempt to determine an
> *individual weighted-average dumping margin* or individual countervailable subsidy
> rate *for each known exporter or producer of the subject merchandise*. However, the
> Secretary may decline to examine a particular exporter or producer if that exporter or
> producer and the petitioner agree.

19 C.F.R. § 351.204(c)(1) (emphasis added).  Neither the statute nor the regulation makes a

distinction between mandatory respondents who put forward information for Commerce to

evaluate, and mandatory respondents that refuse to do so.  In either circumstance, so long as a

mandatory respondent received an "individual rate"—zero, *de minimis*, based on facts available,

or otherwise—that respondent has undergone individual investigation sufficient for section

1673d.  *See MacLean-Fogg Co.*, 753 F.3d at 1244–45 ("The legislative history confirms that

those who are 'individually investigated' receive an 'individual countervailable subsidy rate' and

those who are 'not individually investigated' receive an 'all-others' rate.").

Plaintiffs' suggestion that it is the submission of evidence or documents that is necessary

to fulfill the statutory definition of "individually investigated" is not supported by either the

statute's text or precedential case law.  Indeed, if rates determined entirely under AFA fell

outside of the scope of individually investigated respondents (but zero or *de minimis* margins did

not), Congress could have easily included that distinction in either the plain language of the

statute or in the legislative history.  *See Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 524 (1981)

("If Congress had meant to carve out such an expansive exception, one would expect to find

some mention of it."); *Allied Tube & Conduit Corp. v. United States*, 13 CIT 698, 704, 721 F.

Supp. 305, 311 (1989), *aff'd*, 898 F.2d 780 (Fed. Cir. 1990) ("It is clear to this Court that if

Congress had intended to exclude verification documents from the scope of the statute it could

easily have so provided in the plain language of the statute. This Court declines to look beyond

the plain meaning of the statutory language . . . .").

The court's understanding of section 1673d is further confirmed by the structure of the

statute, which initially lists the available dumping margins of individually investigated exporters

and producers as zero, *de minimis*, or determined entirely under section 1677e[3]—and then later

refers to those same dumping margins as derived from "individually investigated" exporters or

producers.[4]  19 U.S.C. § 1673d(c)(5)(B); *see also Robinson v. United States*, 335 F.3d 1365,

1369 (Fed. Cir. 2003) (statutory reference to a previously defined term is "powerful evidence

that [the term] was meant to have the same meaning in the [statute]."). This leaves the court with

the understanding that even those producers or exporters who receive a "zero or *de minimis*

margin," *or* receive rates "determined entirely under section 1677e," § 1673d(c)(5)(B), are still

"exporters and producers individually investigated," *id*.

_____

[3] *See* 19 U.S.C. § 1673d(c)(5)(B) ("If the estimated weighted average dumping margins
established for all exporters and producers individually investigated are *zero, or de minimis
margins, or are determined entirely under section 1677e of this title*."(emphasis added))
[4] *See id*. ("[I]ncluding averaging the estimated weighted average dumping margins determined
for the exporters and producers *individually investigated*." (emphasis added)).

Additionally, the Federal Circuit has already affirmed the Department's method of calculating an "all-others"-type antidumping rate calculation in *Yangzhou Bestpak Gifts & Crafts Company v. United States*, 716 F.3d 1370, 1374 (Fed. Cir. 2013) ("*Bestpak*"). There, the Federal Circuit addressed the Department's calculation of a "separate rate" for eligible non-mandatory respondents for a proceeding in a non-market economy (China)—the calculation of which follows the same statutory method outlined in section 1673(d). In *Bestpak*, Commerce selected two exporters as mandatory respondents for investigation, one of which completely failed to cooperate and was assigned the AFA China-wide rate while the other cooperated and was assigned a *de minimis* margin. Because all dumping margins in the investigation were either *de minimis* or AFA rates, Commerce applied the exception found in section 1673d(c)(5)(B) in order to calculate a separate rate for twelve additional exporters that submitted applications. In so doing, Commerce took a simple average of both the *de minimis* rate and the AFA China-wide rate, yielding a 123.83 percent margin. Thereafter, one of the twelve additional exporters and separate rate respondent, Bestpak, challenged the separate rate determination, arguing that the simple average methodology was contrary to law. *Id*. at 1375. But in affirming Commerce's methodology to calculate the separate rate, the Federal Circuit depended on the "statute's lenient standard of 'any reasonable method'" to conclude that a simple average of a *de minimis* rate and an AFA rate was "explicitly allow[ed]" by the statute and the SAA. *Id*. at 1378. Therefore, the simple average of an AFA rate and a *de minimis* rate was affirmed and the Court found "no legal error" in Commerce's methodology. *Id*. The same principle can be applied here: Commerce calculated the all-others rate using a simple average of the three individually investigated

mandatory respondents.[5]  This methodology was permitted by the Federal Circuit in *Bestpak* and is affirmed by the court today.

Despite sanctioning the Department's underlying methodology, the Federal Circuit in *Bestpak* also found that while the methodology was permitted by the statute, "the circumstances of [that] case render[ed] a simple average of a *de minimis* and AFA China-wide rate unreasonable *as applied*." *Id*. (emphasis added).  Specifically, the resulting average assigned to Bestpak and the other eleven separate rate respondents (123.83 percent margin) did not reasonably "reflect[] economic reality" and the Department failed to substantiate and calculate the basis for such a dumping margin.  *Id*. at 1378.

Plaintiffs focus on one specific portion of *Bestpak* to support their claim that a mandatory respondent who receives a rate based entirely on AFA is not "individually investigated" for the purposes of section 1673d(c)(5)(B); the Federal Circuit, in dictum, stated that "[the] record simply does not supply enough data for Commerce to calculate its separate rate determination *based on only one individually investigated respondent*." *Id*. (emphasis added).  Plaintiffs hang their hat on the Court's idle reference to the mandatory respondent that received a *de minimis* rate as the "*only* . . . individually investigated respondent" as their premise for finding the Department's methodology in this administrative review contrary to law.  However, to find that

---

[5] Plaintiffs argue that Commerce abandoned the "expected method" of calculating the all-others rate, as prescribed by the SAA.  The "expected method" requires Commerce "to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." SAA at 4201.  The SAA continues that "if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable means."  *Id*.  Here, Commerce did not conduct a weighted-average of the margins available (*de minimis*, and margins determined pursuant to the facts available), because, as the SAA anticipated, volume data was not available for the mandatory respondents that failed to cooperate.  Def.'s Br. at 7.  Therefore, the Department resorted instead to a simple average of the margin data—an approach "explicitly allowed" by the statute.  *Bestpak*, 716 F.3d at 1378.

the *Bestpak* Court implied that an individually investigated respondent is one that necessarily

puts forth evidence on the record (as the *de minimis* mandatory respondent did in *Bestpak*) would

render the first portion of the *Bestpak* decision—that affirmed the Department's underlying

methodology of averaging both rates—meaningless at best, and contradictory at worst.

Moreover, the Court used varying terminology throughout the decision to differentiate between

the "responding" mandatory respondent and the non-cooperative respondent—all the while

refusing to omit the non-cooperative mandatory respondent from the separate rate calculation.

*See id*. at 1379 ("Assigning a non-mandatory, separate rate respondent a margin equal to over

120 percent of the only *fully investigated respondent* . . . ." (emphasis added)); *id*. at 1374 ("In

sum, Commerce's investigation was left with one *participant* after Jiantian's withdrawal."

(emphasis added)).

      Coupled with the Federal Circuit's explicit approval of the Department's methodology in

calculating the separate rate under section 1673d(c)(5)(B), the court is ultimately left with the

understanding that, regardless of the level of cooperation, if a firm is chosen as a mandatory

respondent to an investigation, it is "individually investigated."  Indeed, that is the "plain

meaning" we can safely afford the statutory text.  *See generally Timex V.I., Inc. v. United States*,

157 F.3d 879, 882 (Fed. Cir. 1998).

      Not only does Commerce's chosen methodology find support in the text of section

1673d(c)(5)(B) and the court's precedents, but Plaintiffs have failed to advance either a legal or

factual reason why the Department's methodology is flawed as applied to this administrative

review.  Citing specifically to *Bestpak*, Plaintiffs misinterpret the relevant case law as supporting

the proposition that a respondent is only individually investigated if it cooperates in the

investigation.  *See* Pls.' Br. at 11–12.  But that is not the "approach" that the court "rejected,"

Pls.' Br. at 12.  Instead, the Federal Circuit found that the circumstances of the case before them

rendered the resulting rate unreasonably high and not reflective of the economic realities for

firms independent of Chinese intervention.  *See Bestpak*, 716 F.3d at 1379 ("When there is only

one benchmark, Commerce's comparison of the potential dumping margins with the estimated

AUVs based on scant information available here is not reasonable.").  Therefore, as to Bestpak's

calculated margin, the record did "not contain any information—save the AUV estimate—that

indicat[ed] what Bestpak's individually calculated margin might be," and "[t]here [was] no basis

in the record to tie this 123.38 percent rate to Bestpak's commercial activity."  *Id*. at 1380.

Plaintiffs attempt to raise a similar challenge here, stating that "the circumstances of this

investigation render a simple average of a *de minimis* rate and two AFA rates unreasonable as

applied" and that "the record reveals no evidence showing that such a determination reflects

economic reality."  Pls.' Br. at 14.  But as it stands, Plaintiffs have failed to allege any specific

error in the Department's application of the methodology to the facts of this case.  That is,

Plaintiffs have offered no reason *why* the resulting 30.15 percent all-others rate failed to

"reflect[] economic reality" of the "all-other" firms.  *Id*.  The court need not (and will not) take

Plaintiffs at their word that "[o]n its face, this rate does not bear a connection to the actual

production experience and sales costs of an actual cooperating Korean producer or exporter."

Pls.' Reply Br. at 9.  Indeed, the Department has justified the application of the sanctioned

methodology to calculating the all-others rate.  First, the Department selected Down Nara and

Huvis as mandatory respondents in the investigation based on the assumption that, as the largest

volume exporters, they were "representative of the rest of the market."  I&D Mem. at 18.

Additionally, the 45.23 percent AFA rate was corroborated by "compar[ing] the 45.23 percent

margin to the transaction-specific dumping margins that [the Department] calculated for TCK."

I&D Mem. at 14.  And, in its analysis, Commerce "found that the dumping margin of 45.23

percent [was] not significantly higher than the highest transaction-specific margin calculated for

TCK, and therefore [was] relevant and [had] probative value." *Id*.  Plaintiffs do not dispute these

findings.  Nor do Plaintiffs dispute the claim that "no information on the record [] supports

Solianus' claim that it is like TCK but unlike Down Nara and Huvis." *Id*. at 18.  Without more

evidence to support the claim that the resulting rate is not fairly representative of "all other"

exporters, the court sustains the Department's application of the simple average methodology to

calculate the all-others rate.

    Plaintiffs' reliance on *Changzhou Hawd* fares no better in this regard.  Pls.' Br. at 10

(citing *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1009 (Fed. Cir. 2017)).

Plaintiffs argue that the Federal Circuit "confirm[ed] the principle that to include AFA in

calculating the 'all-others' rate when the only individually investigated respondent received a *de*

*minimis* rate . . . is unreasonable." *Id*.  But again, that is a misreading of the Federal Circuit's

ruling and the specific facts underlying that case.  In *Changzhou Hawd*, Commerce selected three

of the largest exporters as mandatory respondents and found all three to have zero or *de minimis*

dumping margins.  However, in calculating the separate rate, Commerce averaged those three

zero/*de minimis* figures (derived from the mandatory respondents) together with the 25.62

percent AFA rate it had previously adopted as the China-wide rate—yielding a "separate rate" of

6.41 percent for the non-individually investigated companies.[6]  The Federal Circuit rejected that

---

[6] As in *Bestpak*, *Changzhou Hawd* dealt with Commerce's antidumping duty investigation on imports from the People's Republic of China—a non-market economy.  In non-market economy investigations, certain Chinese entities may demonstrate their independence from the Chinese government.  The firms that successfully demonstrate their independence receive a "separate" antidumping duty rate distinct from the "China-wide" rate that applies to entities that did <u>not</u> demonstrate their independence from the Chinese government.  These circumstances are not present in the case before us today.

approach as departing from the "expected method" without first determining "that the

separate-rate firms' dumping is different from that of the mandatory respondents." 848 F.3d at

1012.  But the AFA rate that was averaged together with the three individually investigated

respondent rates was the distinct China-wide entity rate assigned to all entities "that had not

shown their independence from the Chinese government." *Id*. at 1008.  The China-wide AFA

rate was not derived from a mandatory respondent (or, an individually investigated company)—

as it was here.[7]  That fact is integral to the Court's decision, then, because to factor in a rate not

derived from a mandatory respondent would defeat the presumption that "mandatory respondents

. . . are assumed to be representative" of all exporters, especially those "separate" entities that

demonstrated their independence from the Chinese government.  *Id*. at 1012.  Moreover, in

explaining the statutory context surrounding the calculation of a separate rate, the Federal Circuit

also indicated that "the language of 'margins determined pursuant to the facts available'" "refers

to margins *so determined for firms that are individually investigated*"—implicitly

acknowledging a situation wherein calculating an all-others (or separate) rate may include AFA

rates from *individually investigated* firms.  *Id*. at 1011 n.4 (emphasis added).

        The statute and our precedents permit the methodology that Commerce has undertaken in

this administrative review.  Commerce acted in accordance with law in imposing an all-others

rate derived from a simple average of the dumping margins from the three mandatory

respondents.  Additionally, Plaintiffs have failed to allege that this sanctioned methodology was

improperly applied in this administrative proceeding.  The record below does not support

Plaintiffs' argument that the 30.15 percent all-others rate is unreasonably high or

---

[7] The China-wide rate is a stand-in rate for companies that are owned and controlled by the
Government of China.  *See Changzhou Hawd*, 848 F.3d at 1009, 1012–13.

unrepresentative of "all other" exporters.  Accordingly, the court sustains Commerce's

determinations here.

## **CONCLUSION**

For the foregoing reasons, upon consideration of Plaintiff's motion for judgment on the

agency record and all papers and proceedings herein, it is hereby:

**ORDERED** that Commerce's methodology of calculating the all-others rate by simple

average of the three individually investigated exporters is sustained; it is further

**ORDERED** that Commerce properly applied its methodology to calculate the all-others

rate in this administrative review, pursuant to 19 U.S.C. § 1673d; and it is further

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is

DENIED; and it is further

**ORDERED** that the court sustains Commerce's determination in full and enters

judgment in the Department's favor.


Dated: June 21, 2019                                                     /s/ Richard W. Goldberg
New York, New York                                                      Richard W. Goldberg
                                                                                        Senior Judge